IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORAH M. CAMPBELL,                                CV. 04-0943-CO

           Plaintiff,                 FINDINGS AND RECOMMENDATION

     v.

JOANNE B. BARNHART
Commissioner of Social Security,

           Defendant.


COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Deborah M. Campbell ("Campbell"), brings this action pursuant to the Social

Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her claim for Disability

Insurance Benefits.  For the reasons set forth below, the decision of the Commissioner should be

reversed and this matter remanded for further proceedings.

## PROCEDURAL BACKGROUND

Campbell initially filed an application for benefits on February 15, 2002, alleging

disability since August 30, 1997, due to asthma, degenerative arthritis of the lumbar area, back

1  - FINDINGS AND RECOMMENDATION

pain, knee pain, and carpal tunnel syndrome. Her application was denied initially and upon reconsideration. On January 23, 2003, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated March 24, 2003, the ALJ found Campbell was not entitled to benefits. The Appeals Council denied Campbell's request for review, making the ALJ's decision the final decision of the Commissioner. Campbell now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The

Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## **MEDICAL RECORDS**

Emergency room records indicate that Campbell was seen in January 1997 for a cough and in February 1997 for an apparent urinary tract infection. Tr. 462-63. In April 1997 Campbell was treated in the emergency room for back pain she experienced after mowing the lawn. Tr. 397. Clinical findings were minimal, medication was prescribed, and she was instructed to follow up with her physician in five days. Campbell continued to work as a phlebotomist. Tr. 461. In August 1997 Campbell was treated in the emergency room for abdominal pain. Tr. 460.

Subsequently, a polyp was removed during a colonoscopy, and William Ferrin, M.D., diagnosed irritable bowel syndrome. Tr. 394.

Campbell injured her left knee in August or September 1997. An MRI revealed a torn medial meniscus and a strain or partial tear of the anterior cruciate ligament. Tr. 306. On September 23, 1997, J.W. Stewart, M.D. wrote:

> The symptoms that she displays are really not one of instability. She does not put high demands on her knee other than she likes to walk and utilize a bike, which are all straightforward things. We may never come to anterior cruciate reconstruction, but we will need to follow her along to make that decision.

Tr. 307.

On October 1, 1997, Dr. Stewart noted:

> Patient called in indicating that she does enjoy bowling, has difficulty and roller skates, and herefore with her level of activity and demands, she feels that she would like to have her anterior cruciate reconstructed. I think this is appropriate and this will be so scheduled for her left knee.

*Id.*

The surgery was performed on October 21, 1997. On December 18, 1997, Dr. Stewart reported that Campbell had been unable to attend physical therapy. She was able to do straight leg raising, flex to 60 degrees, fully extend, had good stability, and ambulate with her leg stiff. Dr. Stewart concluded:

> I re-gave her a prescription for physical therapy three times a week, together with her home program. She is to use a cane in her right hand. I encouraged her that she must do this in order to accomplish the motion. It is simply hard work on her part that she has to do. See back in three weeks then.

Tr. 309.

Campbell was seen in the emergency room on December 21, 1997, complaining of severe back pain radiating down her right hip. She reported that she had been on crutches for a few months due to her knee injury, and had recently started walking with a cane. Tr. 385. Michael Gillies, M.D., assessed a lumbosacral strain and exacerbation of chronic back pain. Tr. 386. Campbell told Dr. Gillies that she had been advised that she had a degenerative disk problem.

On January 5, 1998, Campbell was evaluated for complaints of left calf pain and back pain. Tr. 519. She was seen again on January 6 for left breast and left back pain, and heart palpitations. Tr. 518. Costochondritis, or inflamation of the chest cartilage, was diagnosed. In February 1998 she had a benign colonic polyp removed. Tr. 415.

On April 3, 1998, A.M. Mick, M.D., saw Campbell for "nasal stuffiness" and evaluation of a left wrist injury sustained three weeks prior. Tr. 517. He counseled that she stop smoking, suggested that she support the wrist, and prescribed an anti-inflammatory for her allergies.

On April 23, 1998, Dr. Mick saw Campbell for a follow up on her knee surgery. He noted "some discomfort with ROM [range of motion]," and prescribed "some Vicodin." *Id.*

 Dr. Stewart saw Campbell again on May 1, 1998, and wrote:

> Patient presents today after a long hiatus. She never did return after I last saw her in December, and was a "No Show" subsequently. She indicates that she has had some residual soreness in the front part of her knee. She did gradually develop reasonable range of motion so that she could flex her knee up to well past 90 and get it out straight. She continues to be a homemaker, taking care of her grandchildren. She notes that about 4 to 6 weeks ago she slipped and fell at home . . . and then has pain anteriorly and medially about her knee . . . . It gradually did improve to some degree but she continues yet to have at this time pain primarily over the medial side of her right knee with weight bearing. . . . She has some decreased range of motion and does limp.

Tr. 309.

A subsequent MRI confirmed that her ACL reconstruction was intact and that she had a strain requiring rehabilitative exercises. Dr. Stewart opined that it would take her six to eight weeks to recover. Tr. 310.

On July 25, 1998, Campbell was seen by David McAnulty, M.D., for pain in the left breast, left shoulder and left scapular area following an episode of choking. Tr. 516. Dr. McAnulty noted that Campbell "[d]enies any leg pain or swelling." *Id*. He diagnosed a chest wall strain, and prescribed 15 Vicodin, as well as Lorazepam for anxiety.

On July 29, 1998, Sandra Ulam, M.D., wrote: "Deborah comes in today with right eye pain. She was playing in the river with her kids on an innertube yesterday when she flipped over on the innertube and hit the back of her head on a rock." Tr. 515.

Dr. Ulam diagnosed conjunctivitis and low back pain, for which she encouraged Campbell to take Advil, and prescribed 20 Vicodin for severe pain.

On September 25, 1998, Dr. Mick saw Campbell for a breast exam prior to mammography. Campbell asserted that she had suffered about six episodes of dizziness over the prior few weeks. Tr. 514. On September 30, 1998, Dr. Mick saw Campbell for sinusitis and menopausal symptoms. Tr. 513.

The rest of the medical record concerns conditions occurring more than a year after Campbell's date last insured. William Carr, M.D., treated Campbell from October 2001 to November 2002. Tr. 703. Campbell had a discectomy in October 2001. Dr. Carr opined in November 2002 that Campbell's back condition was degenerative. Dr. Carr was asked to assess Campbell's condition prior to September 30, 1997. Tr. 703-09. He stated that Campbell would have reduced work pace if working full time at a light or sedentary level of exertion. He could

not estimate her sitting, standing or walking ability.  Tr. 705-06.  Dr. Carr stated that Campbell would need to shift from sitting to standing at will, and would "probably" require one or two unscheduled breaks in a day.  Tr. 706.

In October 2002 Dr. Carr stated that Campbell "cannot function effectively while on [her] feet, standing leaning over, etc.  But also its [sic] very unlikely that [she] at any time will be able to function effectively while sitting.  This is because of the degenerative disk disease and facet joint hypertrophy."   Tr. 710.  Dr. Carr opined that Campbell's degenerative disk disease and facet hypertrophy is "responsible for 10% of [her] disability." *Id*

In October 2002, Walter R. Buhl, M.D., opined that it "is very unlikely that you at any time will be able to function effectively while on your feet, standing, leaning over, etc.  This is because of difficulty using your low back that relates to degenerative disk disease and facet joint hypertrophy.  You also have some significant degenerative joint disease in your left knee, which is the principal reason why standing is not to be considered a viable alternative for your occupation, whatever that is."  Tr. 722.

In February 2003, Campbell had arthroscopic surgery on her left knee to relieve pain and swelling.  Tr. 28.

## ALJ's DECISION

At step one, the ALJ found Campbell had not engaged in substantial gainful activity since the alleged onset of her disability on August 30, 1997.

At step two, the ALJ found Campbell had no medically determinable severe impairment as of September 30, 1997, her date last insured, and that she was therefore not disabled.

**DISCUSSION**

Born October 31, 1953, Campbell was 49 years old at the time of the hearing. She has a GED and has worked as a bartender, a waitress, a cook, a doctor's assistant, an electronics worker and a phlebotomist.

Campbell contends that the ALJ erred by: (1) failing to find that her back and knee impairments and her combined impairments were severe as of September 30, 1997; and (2) inappropriately rejecting the testimony of two treating physicians.

Campbell's Title II insurance lapsed on September 30, 1997, and she has the burden of establishing disability as of that date. *Flaten v. Secretary of HHS,* 44 F3d 1453, 1458 (9th Cir 1995). In addition, she must show that her disabling impairments endured for at least twelve months and continued to within twelve months of her Title II application date. *Id.*

At step two of her inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is "not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities. 20 CFR § 404.1521(a)(1993). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling . . . ." 20 CFR § 404.1521(b)(1)(1993).

The ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each impairment alone is severe. 20 CFR § 404.1523; *Smolen v. Chater,* 80 F3d 1273, 1290 (9th Cir 1996). The step two inquiry is a *"de minimis"* screening device to dispose of groundless claims. *Bowen v. Yuckert,* 482 US 137, 153-54 (1987).

Social Security Ruling (SSR) 96-3p provides in relevant part:

> Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).

I. Knee Impairments

The ALJ found that the only objective medical evidence of a physical impairment as of September 30, 1997, was the evidence surrounding Campbell's knee injury and surgery. He noted that she was able to ambulate comfortably and heel-toe walk in May 2001. Tr. 46. Moreover, Campbell specifically denied having any leg pain in July 1998. Tr. 516. The ALJ's determination that Campbell's knee pain was not severe for twelve months after her date last insured is supported by substantial evidence.

The other impairments alleged by Campbell, excluding back pain, and including carpal tunnel syndrome, abdominal pain, and asthma, were present while she worked. Her asthma was described as "mild" in September 2000. Tr. 406. Accordingly, substantial evidence supports the ALJ's decision that these impairments were not severe prior to September 30, 1997.

Campbell argues that the ALJ erred by misconstruing the above cited medical records in which references to walking, biking, bowling, roller-skating, and innertubing are made. The ALJ stated:

> However, by September 23, 1997, the claimant could move about with a mild limp. J. Stewart, M.D., thought that she had mild instability by examination, but not necessarily in a functional sense [citation omitted]. At that time, the claimant stated that she continued activities such as walking, biking, roller skating, and bowling [citation omitted], which suggests that her knee impairment, while discomforting, was not particularly limiting.

. . . .
In April 1998, the claimant reported that she had "some problems" with her knee, and her physical examination showed some discomfort with range of motion; x-rays were negative, however [citation omitted]. In July 1998, the claimant hurt her head while playing on an inner tube in the river [citation omitted]. That type of horseplay suggests that the claimant's knee was not particularly disabling at the time. Her head "injury" did not impose any significant limitations.

Tr. 45.

Close reading of the October 1997 chart notes support the ALJ's determination that prior to her knee surgery, Campbell was bowling ("does enjoy bowling, has difficulty"). Tr. 307. As to the innertube incident, Campbell contends that this activity can be performed with little physical exertion. However, the doctor's notes indicate that Campbell "was playing in the river with her kids on an innertube yesterday when she flipped over on the innertube and hit the back of her head on a rock." Tr. 515. The ALJ is responsible for resolving ambiguities in the evidence. *Magallanes v. Bowen,* 881 F2d 747, 750 (9th Cir 1989). We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. The ALJ's determination that the incident suggested that Campbell's knee pain was not particularly disabling at that time is rational.

II. Opinions of the Treating Physicians

Walter Buhl, M.D., treated Campbell from May 1999 through 2002. Tr. 467-506. On October 7, 2002, he submitted a summary opining that Campbell was unable to perform a standing job due to degenerative disc disease and her knee problems. Dr. Buhl did not offer any retrospective opinion as to Campbell's condition in September 1997. Accordingly, his evidence was not relevant to the period at issue, and the ALJ's failure to mention Dr. Buhl was not error.

However, Dr. Carr did complete a form in which he opined as to Campbell's condition in September 1997. Reports made after the period of disability are relevant to assess the claimant's disability. *Smith v. Bowen,* 849 F2d 1222, 1225 (9th Cir. 1988). Although Campbell has to establish that disability existed prior to her date last insured, she is not confined to evidence in existence prior to that date.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). In general, the opinion of specialists concerning matters relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Id.*; 20 CFR § 404.1527(d)(5). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202 (citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998)). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR § 404.1527. *Id. (*citing SSR 96-2p). An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

The ALJ failed to address Dr. Carr's opinion, and therefore failed to provide specific, legitimate, or clear and convincing reasons for rejecting that opinion.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir), *cert.*

*denied,* 531 US 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman,* 211 F3d at 1178. The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*

The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

The ALJ improperly failed to consider the testimony of Dr. Carr. However, there are outstanding issues, including whether Dr. Carr's testimony establishes the existence of a severe back impairment prior to Campbell's date last insured. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 USC § 405(g) for further proceedings consistent with these Findings and Recommendation.

**RECOMMENDATION**

The ALJ's finding that Campbell is not disabled is not based on the correct legal standards and not supported by substantial evidence.  For these reasons, the Commissioner's decision should be reversed and the case should be remanded for further proceedings.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*  **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties have ten days within which to file a response to the objections.*  **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

Dated this ___12___ day of August, 2005.

_____/s/_____
JOHN P. COONEY
United States Magistrate Judge